# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MURTAZA ALI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0027-CVE-FHM** |
| | ) | |
| **DUSTIN DUBOISE, Dep. Sheriff,** | ) | |
| **Tulsa County Jail;** | ) | |
| **TRAVIS LAMBERT, Det. Officer,** | ) | |
| **Tulsa County Jail;** | ) | |
| **GARY KAISER, Sgt.,** | ) | |
| **Tulsa County Jail;** | ) | |
| **JOHN DOE, Det. Officer,** | ) | |
| **Tulsa County Jail;** | ) | |
| **ARMOR CORRECTIONAL HEALTH** | ) | |
| **SERVICES, INC., Medical Provider,** | ) | |
| **Tulsa County Jail,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Murtaza Ali, appearing pro se, initiated this 42 U.S.C. § 1983 action on January 15, 2016, by filing a complaint (Dkt. # 1). The Court granted Ali leave to proceed in forma pauperis. See Dkt. # 5. Ali filed a "Third Amended Civil Rights Complaint" (Dkt. # 83) on April 5, 2017. Before the Court are two motions: the motion to dismiss filed by defendants Dustin Duboise, Gary Kaiser, and Travis Lambert (collectively, defendants) (Dkt. # 86); and the motion to dismiss filed by Armor Correctional Health Services, Inc. (Armor) (Dkt. # 85).[1] For the reasons discussed below,

---

[1] In his original and amended complaint, Ali also names a fifth defendant, "John Doe, Det. Officer, Tulsa Cty. Jail." Dkt. ## 1, 83. By Order dated February 3, 2016 (Dkt. # 5), the Court advised Ali that the U.S. Marshal cannot serve a John Doe defendant. On February 29, 2016, Ali submitted service forms for only four defendants: Duboise, Lambert, Kaiser and Armor. See Dkt. # 11. To date, Ali has neither identified John Doe nor sought an

the Court finds that both motions shall be granted, that Ali's amended complaint shall be dismissed without prejudice for failure to state a claim upon which relief may be granted as to Armor, and Kaiser, and that the amended complaint shall be dismissed with prejudice as to Duboise and Lambert because they are entitled to qualified immunity.

## I.     Background

When Ali filed his original complaint, he was an alien detainee in custody of the United States Immigration and Customs Enforcement (ICE), and housed at the Rolling Plains Regional Jail and Detention Center, Haskell, Texas.  But this civil rights action arises from events that Ali alleges occurred while he was a federal prisoner detained at the David L. Moss Criminal Justice Center (a.k.a., the Tulsa County Jail or TCJ), Tulsa, Oklahoma.  See Dkt. # 83.  The following facts are drawn from Ali's amended complaint.

Ali is "an Orthodox Muslim with sincerely held Islamic Religious Beliefs."  Dkt. # 83 at 2. Ali is obligated by his religion to pray five times each day.  Id. at 4 n.1.  On October 17, 2015, at approximately 1:15 p.m., he was preparing to pray in his cell on the J-4 Unit with another federal prisoner, Kamau J. Williams.  Id. at 4.  Deputy Duboise opened the cell door and asked Ali what he was doing.  Id.  When Ali replied that he and Williams were preparing to pray, Duboise stated, "You both cannot perform your prayers in the cell, you will have to pray outside."  Id.  Ali then asked Duboise "to state a place on the unit where they could conduct their obligatory prayers."  Id. According to Ali, Duboise "got infuriated by Ali's questioning, display[ed] hostility," and threatened to "lock [Ali] up."  Id.  Then, when Ali suggested there was "'no legitimate reason' to

---

extension of the 90-day period within which to do so and effect service.  See FED. R. CIV. P. 4(m).  Consequently, defendant John Doe shall be dismissed without prejudice from this action based on Ali's failure to effect timely service.  See id.

lock him up," Duboise "pushed Ali's chest with his left arm, causing Ali's back to be slammed into the cell wall by the door." Id. When Ali asked to report the "assault" to a supervisor, Duboise became "further infuriated" and, "yelled, 'Look at the badge . . . It states Deputy Sheriff, back up, or I will fuck you up and place you under arrest!" Id. Duboise then "slammed the cell door and locked Ali in the cell until 5 [p.m.]" Id. at 5.

That same day, around 6:30 p.m., Ali asked Officer FNU Williams if he could report Duboise's "assault" and pursue criminal charges against him. Id. at 5-6. About 15 minutes later, Officer Lambert and Officer FNU Blackheart, "arrived in the sally port of Unit J-4, and entered the J-4 Unit." Id. at 6. Ali walked into the sally port when the sally port door opened. Id. When Lambert noticed Ali in the sally port, Lambert "pointed a taser at Ali's back side, shouted, 'PUT YOUR FUCKING HANDS UP," and told Ali to turn around. Id. Ali complied. Id. Lambert then "approached" Ali, "violently grabbed [him] by his left arm," "jerked [him] back onto the [J-4 Unit,] and vigorously pushed [him] face first on the J-4 control desk while simultaneously twisting his left arm behind his back." Id. Ali alleges that he "was not resisting and [that he was] complying with all orders." Id.

When Ali told Lambert that he was using excessive force against him, Lambert stated, "I haven't used excessive force yet MOTHER FUCKER, I will show you excessive force." Id. Lambert "continued to violently jerk Ali towards the stairs by his arms hand-cuffed behind his back, all while Ali offered no resistance, causing him to loose [sic] balance and fall on the stairs head first, with a hard impact." Id. Lambert then "continued to drag . . . Ali's prone body up the stairs by violently jerking [him]." Id. Ali asked Lambert to stop and told him that he was experiencing pain in his shoulder. Id. at 7. Officer Doe told Lambert they should take Ali to the medical unit. Id.

Lambert and Doe "then drug Ali back down the stairs while he still lay prone on his frontal body area, still being held by his handcuffed arms behind his back." Id.

At the bottom of the stairs, Sergeant Kaiser told Lambert, "Let me get him." Id. Kaiser and Doe "continued to drag" Ali, while Ali "offered no resistance." Id. When Ali told the officers that they would "not get away with assaulting [him] for no reason," Kaiser "pushed Ali's left wrist upwards . . . causing excruciating pain and shock to Ali from [his] wrist to left shoulder," and said to Ali, "How you like that . . ." Id. at 7-8.

Kaiser, Doe and Ali arrived in the medical unit around 7 p.m. Id. at 10. Ali immediately told medical personnel that he had left shoulder pain and he requested "preservation of the surveillance videos of J-4 Unit and between hallways from J-4 Unit and medical unit showing assault and excessive use of force." Id. at 8. According to Ali, medical personnel examined his shoulder, "concluded Ali had apparent injuries to [his] left shoulder," gave him two ibuprofen for the pain, and "informed Ali that he would be seen by medical the next day." Id. at 8-9. Around 8 p.m., Kaiser transported Ali to the segregation housing unit (SHU) and placed him in a cell. Id.

The next morning, Ali sent a handwritten request for immediate medical treatment. Id. at 10. Medical personnel came to the SHU at 7:30 a.m. and examined Ali's injuries through the glass window of his cell. Id. Ali "requested that his injuries be logged in his medical records." Id. Ali again reported his injuries to medical personnel on October 20th or 21st. Id. at 10-11. On October 22, 2015, medical personnel arrived in the SHU to conduct a "New Arrival Inmate Physical Exam." Id. at 11. For this exam, Ali was removed from his cell and transported to the SHU medical unit. Ali again asked medical personnel to log his injuries. Id. According to Ali, medical personnel "display[ed] hostility," and "refus[ed] to document facts regarding cause and effect of injuries to Ali

by 'Jailer Assault.'" Id. at 12.  Ali alleges that he made repeated requests for further treatment and that medical personnel "ignored [his] request for proper medical diagnosis of injuries by [a] specialist." Id. at 12-13.  According to Ali, those injuries included "physical injury to left shoulder, laceration to right foot, contusion and bruising to right elbow and both wrists, swelling of left knee, numbness to both wrists and ongoing pain to left shoulder and shoulder blade, and ongoing numbness to left wrist." Id. at 9.

On November 3, 2015, Ali was transferred from the TCJ to federal prison to complete his federal sentence. Id. at 13.  Upon completion of his federal sentence on November 10, 2015, the Federal Bureau of Prisons released Ali into ICE's custody for administrative/civil proceedings. Id. at 14.  ICE then placed Ali in the TCJ as an alien detainee. Id.  Ali alleges that while he was detained in the TCJ between November 10, 2015, and December 7, 2015, he "was never seen by a doctor or specialist to diagnose the extent of his injuries sustained during the 'Jailer Assault'" on October 17, 2015. Id. at 14-15.  ICE transferred Ali from the TCJ to the Rolling Plains Regional Jail and Detention Center on December 8, 2015. Id. at 15.

Based on these facts, Ali identifies the following claims:

Count I:     Duboise, acting under color of state law, (a) violated Ali's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, by preventing him from praying in his jail cell; and (b) violated his rights under the Eighth Amendment by using excessive force against him in response to Ali's attempt to exercise his religion.

Count II:    Kaiser and Lambert, acting under color of state law, violated Ali's rights under the Eighth Amendment by using excessive force against him;

Count III:   Armor, acting under color of state law, violated Ali's rights under the Eighth Amendment by failing to provide adequate medical care for the injuries he sustained on October 17, 2015.

See id. at 3-5, 10.[2]  In his prayer for relief, Ali seeks a declaratory judgment that the defendants violated his constitutional rights and nominal damages for those violations, "an award of compensatory and punitive damages . . . in an amount to be proven at trial," and "equitable relief or such other relief . . . [he] is entitled to."  Id. at 16.

## II.      Rule 12(b)(6) standard

The defendants and Armor move to dismiss the amended complaint under FED. R. CIV. P. 12(b)(6).  See Dkt. ## 85, 86.  In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  The complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Id. at 558.

Additionally, when a plaintiff appears pro se, a court must liberally construe the complaint. Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007).  This "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Nonetheless, a pro se plaintiff still bears "the

---

[2]      Ali asserts that he brings this action under § 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  See Dkt. # 83 at 2, 16.  The defendants contend that Ali improperly asserts Bivens claims against them.  See Dkt. # 86 at 4-6.  The Court agrees.  Both § 1983 and Bivens are "vehicles for imposing personal liability on government officials" for civil rights violations.  Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013).  But § 1983 is the appropriate vehicle for asserting claims against state officials, whereas Bivens is the appropriate vehicle for asserting claims against federal officials.  Id.  Because Ali alleges that the defendants violated his civil rights while acting under color of state law in performing their respective duties at the TCJ, see Dkt. # 83 at 1-2, the Court construes this action as one properly brought under § 1983, not Bivens.

burden of alleging sufficient facts on which a recognized legal claim could be based." Id.  And in affording the plaintiff's complaint a liberal construction, a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.    Discussion

### A.    Failure to exhaust

As a preliminary matter, Armor and the defendants contend that this action should be dismissed because Ali failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  See Dkt. # 85 at 11-13; Dkt. # 86 at 10-11. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  But the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  By Order dated February 3, 2016, the Court found that because Ali was being held in connection with immigration proceedings when he filed his original complaint, he did not appear to be a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and that he was therefore not subject to the PLRA's filing fee provisions.  Dkt. # 5 at 2; see Norton v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005) (concluding "that it is plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies"); Agyeman v. INS, 296 F.3d 871, 885-86 (9th Cir. 2002) (finding that PLRA's filing fee provisions "do not apply to an alien detainee who proceeds *in forma pauperis* .

. . so long as he does not also face criminal charges"). Because § 1915(h) and § 1997e(h) use identical language to define "prisoner," the Court concludes that Ali is likewise not subject to the PLRA's exhaustion requirement. Thus, the Court rejects the contention by Armor and the defendants that Ali's alleged failure to exhaust his administrative remedies supports dismissal of this action.

### B.     Failure to state a claim against Armor

In moving to dismiss Ali's amended complaint, Armor primarily contends that Ali fails to plausibly allege that Armor violated his Eighth Amendment right to adequate medical care. Alternatively, Armor contends that Ali fails to plausibly allege that Armor could be liable for any such violation under a theory of municipal liability. See Dkt. # 86 at 4-10.

To survive a motion to dismiss for failure to state a § 1983 claim, a plaintiff must plausibly allege: "(1) a violation of rights protected by the United States Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002) (alteration in original) (citation omitted); see also Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016) (describing a § 1983 claim as consisting of two elements: the "(1) deprivation of a federally protected right by (2) an actor acting under color of state law.").

Additionally, when a plaintiff sues a private corporation for an alleged constitutional violation committed by its employees, the corporation is treated like a municipality and "cannot be held liable under § 1983 on a *respondent superior* theory." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658,

691 (1978)).  Thus, the plaintiff must plausibly allege either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action."  Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000); see also Revilla v. Glanz, 8 F. Supp. 3d 1336, 1341 (N.D. Okla. 2014) (explaining that to establish corporate liability  based on policy or custom plaintiff must  "allege facts to show the existence of a [corporate] policy or custom by which each plaintiff was denied a constitutional right and that there is a direct causal link between the policy or custom and the injury alleged").

Ali alleges that Armor violated his Eighth Amendment right to receive adequate medical care by "showing deliberate indifference to his serious medical needs" when it failed to properly diagnose and treat the injuries he sustained on October 17, 2015.  See Dkt. # 83 at 10.  He specifically alleges that Armor failed to provide adequate medical services (1) between October 17, 2015 and November 3, 2015, and (2) between November 11, 2015 and December 8, 2015.  Id.  Ali further alleges that Armor's failure to provide adequate services resulted from Armor's "custom/conduct/policy of providing deficient and bare minimum medical care to detainees at Tulsa Jail by refusing and/or delaying treatment to save money."  Id. at 14.

The Court agrees with Armor that Ali fails to plausibly allege an Eighth Amendment violation.  Under the Eighth Amendment, jail officials "must provide humane conditions of confinement," i.e., they "must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To state a plausible Eighth Amendment violation based on the failure to provide medical care, a

plaintiff must allege facts evidencing "deliberate indifference to [his] serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Negligence, even negligence rising to the level of medical malpractice, does not violate the Eighth Amendment. See id. at 106-07; see also Callahan v. Poppell, 471 F.3d 1155, 1160 (collecting cases regarding the scope of the Eighth Amendment right to adequate medical care). This means that a plaintiff must allege facts showing "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 827. Rather, to satisfy the deliberate-indifference standard, a plaintiff must plausibly allege (1) a harm that was objectively "sufficiently serious," Callahan, 471 F.3d at 1159, and (2) that the defendant subjectively "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety," Farmer, 511 U.S. at 837.

Ali alleges that he suffered various injuries resulting from the defendants' use of excessive-force against him on October 17, 2015. Specifically, he alleges that he suffered "physical injury to left shoulder, laceration to right foot, contusion and bruising to right elbow and both wrists, swelling of left knee, [and] numbness to both wrists." Dkt. # 83 at 9. Additionally, he alleges that Armor's failure to properly diagnose and treat these injuries caused him "unnecessary prolonged pain and suffering," id. at 15, and that he suffers "ongoing pain to left shoulder and shoulder blade, and ongoing numbness to left wrist," id. at 9. Even assuming these alleged harms are sufficiently serious, the Court finds that the allegations in the amended complaint do not support Ali's assertion that Armor's medical staff responded to his medical needs with deliberate indifference.

First, as Armor points out, Ali's own allegations, taken as true, demonstrate that he was transported to the medical unit around 7 p.m. on October 17, 2015, and that Armor's medical staff promptly examined him, diagnosed "apparent injuries to [his] left shoulder," and provided him with ibuprofen for his pain. Id. at 7-10. The next morning, Ali requested "immediate medical care," and

medical staff responded that same morning by examining Ali's injuries through the glass window of his cell in the SHU. Id. at 10-11. Ali also alleges that he reported his injuries to medical personnel on October 20, 21, and 22. Id. at 11. And, on October 22, 2015, medical personnel physically examined Ali in the medical unit of the SHU and reiterated that he had been diagnosed with a left shoulder injury. Id. at 11-12. These allegations show that Armor's medical staff both diagnosed and treated Ali's injuries, not that they knew of but disregarded his injuries or any risk of further harms from those injuries.

Second, Ali's own allegations suggest that, at most, Armor's medical staff may have been negligent. Significantly, Ali twice alleges that "the non-diagnosis of [his] serious injuries . . . resulted from failure to exercise ordinary medical knowledge, skill and care." Id. at 13, 15. As stated, medical negligence is insufficient to violate the Eighth Amendment. Gamble, 429 U.S. at 106-07. Likewise, to the extent that Ali rests his deliberate-indifference claim on his allegation that Armor's medical staff did not refer him to a specialist, the lack of referral does not violate the Eighth Amendment. See, e.g., id., 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Callahan, 471 F.3d at 1160 (explaining that the Eighth Amendment right to adequate medical treatment does not include a right to a particular course of treatment).

In sum, Ali's amended complaint fails to plausibly allege that Armor violated his Eighth Amendment right to adequate medical care. Consequently, the Court finds it unnecessary to address Armor's alternative argument that the amended complaint fails to plausibly allege that Armor could be held liable under a municipal theory of liability. Based on the foregoing analysis, the Court shall

grant Armor's motion and dismiss dismiss Count III of the amended complaint for failure to state a claim upon which relief may be granted.

### C. Failure to state claims against the defendants

The defendants contend that Ali fails to state any plausible § 1983 claims against them, either in their individual or official capacities. <u>See</u> Dkt. # 86 at 4-9. Alternatively, the defendants assert that they are entitled to qualified immunity because Ali "cannot establish that his constitutional rights were violated by the [defendants]." <u>Id.</u> at 9-10.

### 1. "Official-capacity" claims

The Court agrees with the defendants that Ali fails to state any official-capacity claims against them. <u>See</u> Dkt. #86 at 7-9. "[A] suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office.'" <u>Brown v. Montoya</u>, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)). In contrast, "[i]ndividual capacity 'suits seek to impose personal liability upon a government official for actions he takes under color of state law.'" <u>Id.</u> (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)). While Ali asserts that he brings his claims against the defendants in both their individual and official capacities, <u>see</u> Dkt. # 83 at 16, the substance of his pleadings suggest that he intends to sue the defendants in their individual capacities for their "official acts,"—i.e., for acts they took under color of state law—but not in their official capacities. <u>See</u> <u>Graham</u>, 473 U.S. at 167 n.14 (suggesting that courts may consider look beyond the complaint to determine the true "nature of the liability sought to be imposed"); <u>Melo v. Hafer</u>, 912 F.2d 628, 636 (3d Cir. 1990) ("It does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity.")

Significantly, Ali identifies actions taken by each defendant under color of state law and he seeks compensatory, punitive, and nominal damages for those actions. However, Ali does not suggest that the defendants' actions were representative of an official Tulsa County policy or custom nor does he suggest that any of the defendants carried out those actions as Tulsa County officials with final policy making authority with respect to those actions. See Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010) (explaining that when a defendant brings an official-capacity suit against county officials, the defendant is effectively filing suit against the county); Seamons, 206 F.3d at 1029 (stating that to establish liability against county under § 1983, plaintiff must show either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action"). Moreover, in response to the defendants' argument that Ali cannot recover punitive damages from Tulsa County, see Dkt. # 86 at 10, Ali appears to clarify that he does not seek to impose liability against Tulsa County under a theory of municipal liability, see Dkt. # 92 at 31. For these reasons, the Court shall grant the defendants' motion to dismiss and shall dismiss any claims that Ali asserts against the defendants in their official capacities for failure to state a claim upon which relief may be granted.[3]

### 2.    Free-exercise claim against Deputy Duboise

In Count I of his amended complaint, Ali alleges that Duboise denied him the right to freely exercise his religion, as provided in the First Amendment and the RLUIPA. Dkt. # 83 at 3-5; see

---

[3]    Because Ali fails to plausibly allege any official-capacity claims against the defendants, the Court declines to further address the defendants' argument that punitive damages are unavailable against Tulsa County. See Dkt. # 86 at 10.

also, Dkt. # 92 at 3 (clarifying that religious exercise claim is asserted under both First Amendment and RLUIPA).

Although Ali asserts that he brings his free-exercise claim under both the First Amendment and the RLUIPA, the Court finds that this claim is asserted against Duboise only in his individual capacity. See supra § C.1. The Tenth Circuit has held that there is no cause of action under the RLUIPA for individual-capacity claims. Stewart v. Beach, 701 F.3d 1322, 1335 (10th Cir. 2012). Thus, the Court will consider only whether Ali plausibly alleges a free-exercise claim under the First Amendment.

To state plausible free-exercise claim under the First Amendment, a plaintiff must allege that the defendant's conduct "substantially burdened . . . sincerely-held religious beliefs." Kay, 500 F.3d at 1218 (quoting Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007)); see also Williams v. Wilkinson, 645 F. App'x 692, 700 (10th Cir. 2016) (unpublished)[4] (noting that "at the motion-to-dismiss stage, the prisoner need allege nothing more than a substantial burden on the exercise of a sincerely-held religious belief"). The Tenth Circuit has explained that "a religious exercise is substantially burdened," inter alia, "when a government prevents participation in conduct motivated by a sincerely held religious belief." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1315 (10th Cir. 2010); see also McKinley v. Maddox, 493 F. App'x 928, 933 n.4 (10th Cir. 2012) (noting that while Abdulhaseeb defined "substantial burden" in context of RLUIPA claim, the same definition applies in context of First Amendment free-exercise claim). In Abdulhaseeb, the Tenth Circuit emphasized "that [not] every infringement on a religious exercise will constitute a substantial burden." 600 F.3d

---

[4]       This and all other unpublished opinions cited herein are not precedential but are cited for their persuasive value. See FED. R. APP. P. 32.1; 10th Cir. R. 32.1.

at 1316. For example, "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion." Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009). Rather, a plaintiff must allege a "conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." Id. (quoting Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006)).

Here, Ali alleges that he is "an Orthodox Muslim with sincerely held Islamic Religious Beliefs," Dkt. # 83 at 2, and that his religion obligates him to pray five times each day, id. at 4 n.1. On October 17, 2015, Ali was preparing to pray in his cell with another federal prisoner when Duboise opened the cell door and asked Ali what he was doing. Id. at 4. When Ali replied that they were preparing to pray, Duboise stated, "You both cannot perform your prayers in the cell, you will have to pray outside." Id. Without more, these allegations do not plausibly allege that Duboise prevented Ali from freely exercising his religion. But there is more.

According to Ali, when he asked Duboise "to state a place on the unit where they could conduct their obligatory prayers," Duboise became "infuriated by Ali's questioning, display[ed] hostility," and threatened to "lock [Ali] up." Id. Then, when Ali suggested there was "'no legitimate reason' to lock him up," Duboise "pushed Ali's chest with his left arm, causing Ali's back to be slammed into the cell wall by the door." Id. When Ali asked to report the "assault" to a supervisor, Duboise became "further infuriated," threatened to "fuck [Ali] up and place [him] under arrest," "slammed the cell door[,] and locked Ali in the cell until 5 [p.m.]" Id.

Accepting Ali's allegations as true, the Court finds them sufficient to plausibly allege, in Count I of the amended complaint, that Duboise intentionally interfered with and substantially burdened Ali's free-exercise rights by preventing him from performing his obligatory prayers.

### 3.    Excessive-force claims against the defendants

In Counts I and II of his amended complaint, Ali alleges that Duboise, Lambert, and Kaiser each violated the Eighth Amendment by using excessive force against him on October 17, 2015. See Dkt. # 83 at 4-9.

"[T]he Eighth Amendment prohibits 'the unnecessary and wanton infliction of pain.'" Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1152 (10th Cir. 2006) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  When a prisoner alleges that a corrections officer has used excessive force against him in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  To state an excessive-force claim, a plaintiff must plausibly allege "(1) that 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) 'that the officials acted with a sufficiently culpable state of mind.'" Serna, 455 F.3d at 1152 (quoting Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003)).  And a prisoner need not prove a "significant injury" to state a plausible excessive-force claim because such a claim must be decided "based on the nature of the force rather than the extent of the injury." Id. at 34, 37.  But "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. at 37 (quoting Hudson, 503 U.S. at 9).  Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38 (quoting Hudson, 503 U.S. at 9).

a. **Deputy Duboise**

With respect to Duboise's use of force, Ali alleges that after he asked Duboise for an alternative location outside of his cell where he could pray, Duboise became "infuriated," "display[ed] hostility," and threatened to "lock [Ali] up." Id. Then, when Ali suggested there was no reason to lock him in his cell, Duboise "pushed Ali's chest with his left arm, causing Ali's back to be slammed into the cell wall by the door." Id. Ultimately, after threatening to "fuck [Ali] up and place [him] under arrest," Duboise made good on his first threat and locked Ali in his cell for a few hours. Id.

The Court construes Ali's excessive-force claim against Duboise as resting on the "push[]" that caused Ali "to be slammed into the cell wall by the door." Id. Accepting Ali's allegations as true, this "push" appears both unprovoked and unnecessary. According to Ali the "push" was precipitated by a simple question from Ali about where he could pray outside his cell. Moreover, Duboise accompanied his seemingly unnecessary "push" with threatening words and a decision to place Ali on temporary lock down, presumably as some form of punishment. Neither Ali's amended complaint nor the Special Report filed by the defendants (Dkt. # 34), supports Duboise's assertion that Ali "was subjected to a lockdown for a portion of the afternoon after failing to follow Deputy Duboise's order." Dkt. # 86 at 7.[5] Instead, Ali's allegations support a reasonable inference that

---

[5]     By Order dated March 3, 2016 (Dkt. # 10), the Court directed the defendants to file a Special Report. See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The defendants did so and, in their motion to dismiss, they cite the Report to support their assertions that all interactions they had with Ali were "reasonable." See Dkt. # 86 at 7. But the majority of the facts alleged in the Report dispute Ali's allegations that he complied with the defendants orders at all relevant times and offered no resistance. At the motion-to-dismiss stage, a court may not use a Martinez report to resolve factual disputes. Swoboda v. Dubach, 992 F.2d 286, 290 (10th Cir. 1993). Moreover, the Report focuses on Lambert's actions and does not address Ali's claims against Duboise or Kaiser. See Dkt. # 34. Accordingly, the Court considers the

Duboise use of force was excessive because it "was [not] applied in a good-faith effort to maintain or restore discipline," but rather was applied "maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 9. Nonetheless, while Ali's allegations plausibly allege that Duboise acted with a "sufficiently culpable state of mind," the Court finds the allegations insufficient to show that Duboise's "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>See</u> <u>Smith</u>, 339 F.3d at 1212. As noted, not every push or shove by a prison official, even if "malevolent" violates the Constitution. <u>See</u> <u>Hudson</u>, 503 U.S. at 9. And, while Ali alleges that he sustained multiple injuries on October 17, 2015 from the defendants' use of excessive force against him, he fails to plausibly allege that he sustained any "discernible injury" as a result of Duboise's actions. <u>See</u> <u>id.</u> Thus, the Court finds that Ali fails to plausibly allege an excessive-force claim against Duboise in Count I of the amended complaint.

### b.    Officer Lambert

Regarding Lambert's use of force, Ali alleges that around 6:45 p.m., Lambert noticed Ali in the sally port of the J-4 Unit. Dkt. # 83 at 6. According to Ali, , Lambert "pointed a taser at Ali's back side, shouted, 'PUT YOUR FUCKING HANDS UP," and told Ali to turn around. <u>Id.</u> Despite Ali's compliance with these orders, Lambert (1) "violently grabbed [him] by his left arm," (2) "jerked [him] back onto the [J-4 Unit,]" and (3) "vigorously pushed [him] face first on the J-4 control desk while simultaneously twisting his left arm behind his back." <u>Id.</u> Then, in response to Ali's verbal protests regarding the use of force, Lambert stated that he would "show [Ali] excessive force." <u>Id.</u> Lambert proceeded "to violently jerk Ali towards the stairs by his arms hand-cuffed

---

Report only to the extent that the facts therein do not conflict with Ali's factual allegations which, at this stage of the proceedings, the Court must accept as true.

behind his back . . . causing him to loose [sic] balance and fall on the stairs head first, with a hard impact." Id. Lambert then "continued to drag . . . Ali's prone body up the stairs by violently jerking [him]." Id. Ali asked Lambert to stop and reported shoulder pain. Id. at 7. Finally, in response to Officer Doe's suggestion that they take Ali to the medical unit, Lambert and Doe "drug Ali back down the stairs while he still lay prone on his frontal body area, still being held by his handcuffed arms behind his back." Id.

The Court finds these allegations, accepted as true, are sufficient to plausibly allege an excessive-force claim against Lambert. Again, nothing in the amended complaint suggests that Lambert's use of force against Ali was applied in a "good-faith effort to maintain or restore discipline," rather the allegations in the amended complaint support a reasonable inference that Lambert "maliciously and sadistically [intended] to cause harm." Hudson, 503 U.S. at 7. Lambert's use of force appears both unprovoked and unnecessary, he punctuated his use of force with strong language, and he continued using force even after Ali reported that he was experiencing pain. See e.g., Serna, 455 F.3d at 1152 (noting that courts may "infer malicious, sadistic intent from the conduct itself where 'there can be no legitimate purpose' for the officers' conduct" (quoting Smith, 339 F.3d at 1213). And it is reasonable to infer that the injuries Ali sustained were a direct result of Lambert's actions. Moreover, to the extent Lambert relies on the Report filed by the defendants to suggest that his use of force was "reasonable" in response to Ali's refusal to enter his cell per Lambert's orders, see Dkt. # 34 at 2-3; Dkt # 86 at 7, the Report raises factual disputes that the Court cannot resolve on a motion to dismiss. Thus, accepting Ali's allegations as true, the Court finds that Ali plausibly alleges an excessive-force claim against Lambert in Count II of the amended complaint.

### c.    Sergeant Kaiser

Finally, with respect to Kaiser's use of force, Ali alleges that when Ali, Doe and Lambert reached the bottom of the stairs, Kaiser effectively stepped in for Lambert. Kaiser and Doe then "continued to drag" Ali, while Ali "offered no resistance."  Dkt. # 83 at 7.  When Ali told the officers that they would "not get away with assaulting [him] for no reason," Kaiser "pushed Ali's left wrist upwards . . . causing excruciating pain and shock to Ali from [his] wrist to left shoulder," and said to Ali, "How you like that . . ." Id. at 7-8.

The Court finds that Ali's allegations, even accepted as true, are not sufficient to state a plausible excessive-force claim against Kaiser.  Like the force used by Duboise, the force used by Kaiser was minimal even if unnecessary and employed with a sufficiently culpable state of mind. Consequently, the Court finds that Ali fails to plausibly allege an excessive-force claim against Kaiser in Count II of his amended complaint.

### 4.    Due-process claims

As a final matter, within his supporting facts for Count II, Ali refers to Kaiser's decision to place Ali in the SHU and asserts that "[i]t is self-evident that [he] was denied fundamental due process under the Fifth Amendment as [he] was on a Federal Writ from BOP at time of assault." Dkt. # 83 at 9.  Similarly, in his response to the defendants' motion to dismiss, Ali refers to Duboise's decision to lock him down in his cell for a few hours and asserts that he "was subjected to due process violation when he was punished (locked down) arbitrarily."  Dkt. # 92 at 16 n.9.

Even liberally construing Ali's pleadings, the Court finds that these undeveloped assertions are insufficient to state any plausible due-process claims against Kaiser and Duboise.  See Whitney, 113 F.3d at 1173-74 (noting that it is not the court's duty to "round out a plaintiff's complaint" with

additional facts or to "construct a legal theory on a plaintiff's behalf"). Thus, to the extent Ali alleges due-process claims against Kaiser and Duboise, the Court shall grant the defendants' motion to dismiss and dismiss such claims for failure to state a claim upon which relief may be granted.

### D. Qualified immunity

The defendants also seek dismissal of the amended complaint on grounds that they are entitled to qualified immunity because Ali "cannot establish that his constitutional rights were violated." Dkt. # 86 at 10.

The doctrine of qualified immunity "balances 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Generally, when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Cillo v. City of Greenwood Vill., 739 F.3d 451, 460 (10th Cir. 2013). Thus, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." Schwartz, 702 F.3d at 579.

As just discussed, the Court finds that Ali's amended complaint plausibly alleges two constitutional violations: (1) Duboise violated the First Amendment by preventing Ali from freely exercising his religion and (2) Lambert violated the Eighth Amendment by using excessive force against Ali. Thus, contrary to the defendants' assertion, Duboise and Lambert are not entitled to

qualified immunity on the grounds that Ali "failed to allege a constitutional deprivation related to his interactions with each of the [defendants]." Dkt. # 94 at 5. The qualified immunity issue turns then on whether Ali has shown that the constitutional rights at issue were "clearly established at the time of the defendant[s'] unlawful conduct." Cillo, 739 F.3d at 460.

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." T.D. v. Patton, 868 F.3d 1209, 1220 (10th Cir. 2017). A plaintiff is not required to demonstrate clearly established law by pointing to "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). And the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quoting al-Kidd, 563 U.S. 731, 742 (2011)). Rather, "clearly established law must be 'particularized' to the facts of the case." Id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). Thus, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular* conduct is clearly established.'" Mullenix, 136 S. Ct. at 308 (quoting al-Kidd, 563 U.S. at 742).

In response to the defendants' assertion of qualified immunity, Ali broadly directs the Court to the cases he cites at pages 7-27 of his response to the defendants' motion to dismiss. See Dkt. # 92 at 30. Given Ali's pro se status, the Court has carefully reviewed the cases cited therein. Highly

summarized, the cases Ali cites at pages 9-11 of his response establish the general proposition that a government cannot substantially burden an inmate's religious exercise absent a legitimate penological interest. See, e.g., Yellowbear v. Lampert, 741 F.3d 48, 59 (10th Cir. 2014); Abdulhaseeb, 600 F. 3d at 1312. But these cases do not clearly establish that Duboise's particular conduct—telling an inmate to pray outside his cell and responding to the inmate's request for a more specific location with threats, expletives, a "push," and a temporary lock down—would violate the First Amendment. Thus, the Court finds that Duboise is entitled to qualified immunity.

Similarly, the cases Ali cites at pages 12-27 of his response establish the general proposition that a prison official who uses force against an inmate, without provocation and without a legitimate penological reason, may violate the Eighth Amendment even if the inmate suffers no discernible injuries. See, e.g., Wilkins, 130 S. Ct. at 1178-79; Serna, 455 F.3d at 1152; Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992). But none of these cases are "close enough [to] on point to make the unlawfulness of [Lambert's] actions apparent." Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir. 2011). Specifically, Ali fails to identify any case that would have put Lambert on notice that his conduct—described by Ali as "pointing a taser, violently pushing [Ali] on control desk while twisting left arm, [and] dragging [Ali] by his handcuffs behind his back up the stairs—would violate the Eighth Amendment's prohibition on the use of excessive force. See, e.g., Sause v. Bauer, 859 F.3d 1270, 1275-76 (10th Cir. 2017) (analyzing "clearly established" prong of qualified immunity test based on specific "factual scenario" faced by defendant and concluding defendant was entitled to qualified immunity because his alleged conduct though "obviously unprofessional" was not "'obviously unlawful'" (quoting Browder v. City of Albuquerque, 787 F.3d 1076, 1082 (10th Cir. 2015)). Thus, the Court finds that Lambert is also entitled to qualified immunity.

Consequently, the Court shall grant the defendants' motion to dismiss and dismiss the amended complaint with respect to the free-exercise claim against Duboise in Count I and the excessive-force claim against Lambert in Count II because both defendants are entitled to qualified immunity.

## IV. Conclusion

The Court shall grant Armor's and the defendants' motions to dismiss the amended complaint. The amended complaint shall be dismissed without prejudice, in part, because it fails to state a deliberate-indifference claim against Armor, fails to state any official-capacity claims against the defendants, and fails to state excessive-force or due-process claims against Duboise and Kaiser. The amended complaint shall be dismissed with prejudice, in part, because Duboise and Lambert are entitled to qualified immunity with respect to Ali's free-exercise claim against Duboise and his excessive-force claim against Lambert. Defendant John Doe shall be dismissed without prejudice from this action based on Ali's failure to effect service.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Armor's motion to dismiss (Dkt. # 85) is **granted**.

2. The defendants' motion to dismiss (Dkt. # 86) is **granted**.

3. Ali's amended complaint (Dkt. # 83) is **dismissed without prejudice** for failure to state a claim upon which relief may be granted as to the deliberate-indifference claim asserted against Armor, any official-capacity claims asserted against the defendants, and the excessive-force and due-process claims asserted against Duboise and Kaiser.

4.  Ali's amended complaint (Dkt. # 83) is **dismissed with prejudice** on the basis of qualified immunity as to the free-exercise claim against Duboise and the excessive-force claim against Lambert.

5.  Defendant John Doe is **dismissed without prejudice** from this action based on Ali's failure to effect service.

6.  A separate Judgment shall be entered in this case.

**DATED** this 30th day of November, 2017.

_____

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE