# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MURTAZA ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CV-0027-CVE-FHM |
| | ) |
| TRAVIS LAMBERT, Det. Officer, | ) |
| Tulsa County Jail, | ) |
| GARY KAISER, Sgt., Tulsa County Jail, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a civil rights action. Before the Court is defendant Gary Kaiser's motion to dismiss (Dkt. # 86)[1] the excessive-force claim alleged against him in count II of plaintiff Murtaza Ali's 42 U.S.C. § 1983 amended complaint (Dkt. # 83). As directed by the Court, Ali and Kaiser each filed a supplemental brief (Dkt. ## 113, 114) addressing Kaiser's assertion that the claim should be dismissed on the basis of qualified immunity. For the reasons that follow, the Court finds that Kaiser is not entitled to qualified immunity and denies his motion to dismiss the excessive-force claim alleged against him in count II of the amended complaint.

---

[1] The motion to dismiss (Dkt. # 86) was jointly filed by Defendants Dustin Duboise, Gary Kaiser and Travis Lambert, on April 26, 2017. After the Court granted the motion in favor of all three defendants, Ali appealed. Dkt. # 100. Pursuant to the Tenth Circuit's decision, Dkt. # 106, Duboise is no longer a party to this action. See Dkt. # 108, at 2-3. Further, as discussed below, because the Tenth Circuit reversed this Court's determination that Lambert was entitled to qualified immunity, the sole basis this Court relied on to grant his request to dismiss the amended complaint, the Court construed the Tenth Circuit's decision as effectively denying the motion to dismiss as to Lambert. As a result, the Court directed Lambert to file an answer and reinstated the motion to dismiss (Dkt. # 86) only as to Kaiser's request for dismissal on the basis of qualified immunity. See Dkt. # 108, at 2-3. To the extent the Court's prior order (Dkt. # 108) could be construed as reinstating the motion to dismiss as to all three defendants, the Court hereby denies the motion to dismiss (Dkt. # 86) as to Duboise and Lambert.

**I.     Background**

By opinion and order filed November 30, 2017 (Dkt. # 98), the Court dismissed Ali's excessive-force claims against Kaiser and defendant Travis Lambert, as alleged in count II of the amended complaint. The Court dismissed the claim against Kaiser for failure to state a claim upon which relief could be granted. Dkt. # 98, at 20. The Court found Ali's allegations sufficient to state a plausible claim against Lambert, but found that Lambert was entitled to qualified immunity. Id. at 18-19, 23. Ali filed a timely appeal with the United States Court of Appeals for the Tenth Circuit. See Dkt. ## 100, 103. By order and judgment filed February 6, 2019 (Dkt. # 106), the Tenth Circuit reversed the dismissal of count II, with respect to Ali's excessive-force claims against Kaiser and Lambert, and remanded the case for further proceedings. See Dkt. # 106, at 10-12; Ali v. Duboise, No. 17-5128, 2019 WL 461123, at *4-5 (10th Cir. Feb. 6, 2019) (unpublished). The Tenth Circuit held that count II of the amended complaint states a plausible excessive-force claim against both Kaiser and Lambert and that Lambert was not entitled to dismissal on the basis of qualified immunity. Dkt. # 106, at 10-11. Like this Court, the Tenth Circuit did not address Kaiser's assertion that he is entitled to dismissal on the basis of qualified immunity. Dkt. # 106, at 10 & n.6.

On March 5, 2019, pursuant to the Tenth Circuit's mandate, the Court ordered this matter reopened for further proceedings as to the excessive-force claims alleged against Kaiser and Lambert in count II of the amended complaint, directed Lambert to file an answer to the amended complaint, reinstated Kaiser's motion to dismiss the amended complaint, and directed Kaiser and Ali to file supplemental briefs addressing whether Kaiser's alleged actions of "twice deliberately and unnecessarily manipulat[ing] Ali's arms or shoulders, while he was handcuffed, in a way that caused excruciating pain," see Dkt. # 106, at 10, violated clearly established law. Dkt. # 108, at 3. As

2

directed, Lambert filed an answer on March 19, 2019 (Dkt. # 111), Ali filed a supplemental brief (Dkt. # 113) on April 1, 2019, and Kaiser filed a supplemental brief (Dkt. # 114) on April 4, 2019.

**II.     Analysis**

Kaiser seeks dismissal of the excessive-force claim on the basis of qualified immunity. Dkt. # 86, at 9-10. The doctrine of qualified immunity "balances 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Generally, when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Cillo v. City of Greenwood Vill., 739 F.3d 451, 460 (10th Cir. 2013). Thus, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." Schwartz, 702 F.3d at 579.

Kaiser initially sought dismissal of Ali's excessive-force claim, as alleged in count II of the amended complaint, on grounds that he is entitled to qualified immunity because Ali could not establish that his constitutional rights were violated . . . even viewing the facts" in Ali's favor. Dkt. # 86 at 10. However, under the law-of-the-case doctrine, Ali has met his burden to state a plausible Eighth Amendment violation arising from Kaiser's actions of "twice deliberately and unnecessarily manipulat[ing] Ali's arms or shoulders, while he was handcuffed, in a way that caused excruciating pain." See Dkt. # 106, at 10; Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1183 (10th Cir. 1995)

("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.").

The only question that remains is whether Ali has met his burden to plausibly allege that Kaiser's actions violated clearly established law. "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Redmond v. Crowther, 882 F.3d 927, 935 (10th Cir. 2018) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). In determining whether the law was clearly established at the time of the alleged violation, a court must ask whether the plaintiff has "identif[ied] an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting Weise v. Casper, 593 F.3d 1163, 1167 (10th Cir. 2010)). To show that the law is clearly established, a plaintiff need not identify a case that is "exactly on point," Weise, 593 U.S. at 1167, "but existing precedent must have placed the . . . constitutional question beyond debate," Mullenix, 136 S. Ct. at 308 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (quoting al-Kidd, 563 U.S. at 743). And, "[i]n furthering the protective aims of qualified immunity, it is important that courts be especially sensitive to the need to ensure 'a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited,' where the legal

4

standards of liability under the prior law are broad and general or depend on a balancing of discrete and sometimes opposing interests." Cummings v. Dean, 913 F.3d 1227, 1240 (10th Cir. 2019) (quoting Estate of B.I.C. v. Gillen, 761 F.3d 1099, 1106 (10th Cir. 2014)).

Ali claims that Kaiser's actions, of painfully manipulating Ali's arms while Ali's hands were cuffed behind him, violated law that was clearly established as of October 2015. Dkt. # 83, at 5-8. Ali specifically alleges that while his hands were cuffed behind his back, Kaiser and a second detention officer "continued to drag" Ali along the floor, while Ali "offered no resistance" and "shout[ed] in pain." Id. at 7. The officers "then made [him] stand up and forcefully pushed [his] handcuffed arms that were behind his back, in a way to hyperextend them above his head, while [his] neck was being pushed by [both officers], causing excruciating pain to Ali's handcuffed, wrist, elbows and shoulders." Id. When Ali told the officers that they would "not get away with assaulting [him] for no reason," Kaiser "deliberately" and "with malicious intent to cause pain and injury pushed Ali's left wrist upwards . . . causing excruciating pain and shock to Ali from [his] wrist to left shoulder." Id. at 7. Ali alleges Kaiser's actions were "unprovoked" and "unjustified." Id. at 8. Ali further alleges Lambert's intent to cause pain may be inferred from the fact that Kaiser "stated with glee, 'How you like that . . .'" in conjunction with the use of force. Id.

In support of his claim that Kaiser's actions violated clearly established law, Ali broadly directs the Court to the cases he cites at pages 2-15 of his supplemental brief and asserts that those cases "make[] clear that the relevant law is clearly established." Dkt. # 113, at 15, 17. Given Ali's pro se status, the Court reviewed each of the cases cited at pages 2-15 of Ali's supplemental brief. Consistent with Tenth Circuit precedent, the Court disregarded unpublished circuit court opinions and all federal district court decisions. See Quinn, 780 F.3d at 1005 (noting that plaintiff must

5

"identify[] an on-point Supreme Court or published Tenth Circuit decision" or cases from other courts showing that the "weight of authority" balances in plaintiff's favor); Woodward v. City of Worland, 977 F.2d 1392, 1397 (10th Cir. 1992) (noting that "a district court decision will not ordinarily 'clearly establish' the law even of its own circuit, much less that of other circuits.").

Some of the cases Ali cites support the general legal principle that a prison guard violates the Eighth Amendment when he or she applies force against an inmate "maliciously and sadistically to cause harm." See e.g., Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."); Whitley v. Albers, 475 U.S. 312, 320 (1986) (concluding, in the context of an Eighth Amendment excessive-force claim, that "[w]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm'" (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973))); United States v. Bailey, 444 U.S. 394, 423 (1980) ("It cannot be doubted that excessive or unprovoked violence and brutality inflicted by prison guards upon inmates violates the Eighth Amendment.'); see also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam) (reaffirming general rule from Hudson that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"). But general statements of the law ordinarily do not provide fair notice to officials that their particularized conduct violates the Constitution. See, e.g., al-Kidd, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates

the Fourth Amendment is of little help in determining whethe the violative nature of particular conduct is clearly established.").

And many of the cases Ali cites do not involve sufficiently similar facts and, therefore, do not support his assertion that the law was clearly established with respect to Kaiser's alleged conduct. See, e.g., Walker v. Bowersox, 526 F.3d 1186, 1188-90 (8th Cir. 2008) (reversing grant of summary judgment in favor of correctional officers when officers failed to rebut inmate's evidence supporting that officers used excessive force by restraining inmate on a bench for 24 hours for refusing to have a cell mate and pepper-sprayed him for refusing to give officers a food tray); Norton v. City of Marietta, 432 F.3d 1145, 1153-54 (10th Cir. 2005) (reversing grant of summary judgment in favor of defendants on inmate's Eighth Amendment excessive-force claim when factual disputes remained as to whether officers' use of pepper spray, handcuffs, and restraint board was necessary to restore discipline or malicious and intended to cause harm); Brooks v. Kyler, 204 F.3d 102, 104, 106-09 (3d Cir. 2000) (reversing grant of summary judgment in favor of prison guards when "[a]ccepting [plaintiff's] allegations as true . . . a jury could find that the defendants acted not merely in good faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm" when plaintiff alleged his noncompliance with single order to hang up telephone led guards to punch him in the head, stomp on his back and neck, choke him, slam him into a wall, and threaten to kill him, all while plaintiff was "handcuffed to [a] waist restraint belt" and, at some point during the incident, placed in leg shackles); United States v. Walsh, 194 F.3d 37, 40-44, 50 (2d Cir. 1999) (finding Eighth Amendment violation when correctional officer, on three separate occasions, required mentally ill inmate to let officer step on inmate's penis in exchange for cigarettes); Mitchell v. Maynard, 80 F.3d 1433, 1440-41 (10th Cir. 1996) (concluding a reasonable

7

jury could find in favor of inmate on Eighth Amendment claim when facts viewed in inmate's favor showed "after he tripped and fell to the ground he was beaten by several guards with night sticks while they shouted racial epithets at him" all while he was "naked and shackled at the wrists, ankles and belly"); Willliams v. Benjamin, 77 F.3d 756, 761-68 (4th Cir. 1996) (reversing grant of summary judgment in favor of correctional officers who responded to inmate's action of throwing unidentified liquid at them by spraying him with mace, placing him on bed in arm and leg restraints, and not allowing him to wash mace off for eight hours, resulting in "immense" pain to the inmate); El'Amin v. Pearce, 750 F.2d 829, 830 (10th Cir. 1984) (reversing summary dismissal of plaintiff's complaint alleging prison guards violated the Eighth Amendment when they "beat him about the face and head with a padlock, black jack, and keys, knocking him to the floor, and then kicked him in his lower back with cowboy boots" in response to his action of filing a lawsuit). While these cases each involve the use of force against inmates, none seems "close enough on point to make the unlawfulness of [Kaiser's] conduct apparent." Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir. 2011).

However, some cases Ali cites appear to involve sufficiently similar facts and, thus, support his contention that Kaiser's alleged actions of unnecessarily inflicting pain on a non-resisting, handcuffed prisoner, without provocation, violated clearly established law. See e.g., Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009) ("No reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law"); Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (finding inmate stated three plausible Eighth Amendment excessive-force claims when complaint alleged (1) that "while handcuffed [he] was punched in the ribs, collar, arm, and

8

skull" by three officers, (2) that while "his arms were shackled" two officers "punched him in the face four times," and (3) "several defendants punched and kicked [him] in the rib cage, skull, knee cap, backbone, sacrum, spine, collar bone, and teeth, and pulled him by his penis," and that "each of the alleged beatings . . . was administered maliciously and sadistically, and without need or provocation"); Griffen v. Crippen, 193 F.3d 89, 91-92 (2d Cir. 1999) (concluding that dismissal of "weak" excessive-force claim was inappropriate when inmate alleged prison guards assaulted him while he was handcuffed and "there [were] genuine issues of material fact concerning what transpired after appellate was handcuffed and whether guards maliciously used force against him"); Miller v. Glanz, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (holding allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked a prisoner who was handcuffed behind his back and whose ankles were also restrained); see also Thompson v. Commonwealth of Virginia, 878 F.3d 89, 105 (4th Cir. 2017) (discussing cases decided before April 8, 2010, and concluding: "As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order. That principle applies with particular clarity to cases such as this one, where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way."). Accepting as true Ali's allegations that Kaiser acted deliberately and maliciously with the intent to cause Ali pain by manipulating Ali's arms while Ali was handcuffed and offering no resistance, Dkt. # 83, at 7-8, these cases support Ali's assertion that the law governing Kaiser's alleged conduct was clearly established.

9

### III. Conclusion

Based on the foregoing, the Court finds that Kaiser is not entitled to dismissal on the basis of qualified immunity. The Court thus denies Kaiser's motion to dismiss the excessive-force claim against him, as alleged in count II of the amended complaint. Within 14 days of the entry of this opinion and order, Kaiser shall file an answer to the amended complaint with respect to that claim. See FED. R. CIV. P. 12(a)(4)(A).

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The motion to dismiss (Dkt. # 86) is **denied**.

2. Within 14 days of the entry of this opinion and order, Kaiser shall file an answer to the amended complaint with respect to the excessive-force claim alleged against him in count II of the amended complaint (Dkt. # 83).

**DATED** this 25th day of April, 2019.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE